## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

   *Plaintiff,*

v.            Case No. 24-10128-EFM

BRYAN LEWIS BAIRD,

   *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Bryan Lewis Baird's Motion to Suppress (Doc. 20). Baird seeks to suppress all evidence seized from the search of his residence on September 6, 2023. For the reasons discussed below, the Court denies Baird's Motion to Suppress.

### I.  Factual and Procedural Background

On August 29, 2023, officers from the Wichita Police Department Special Investigations Bureau ("SIB") received information from the Riley County Police Department ("RCPD") about a dark in color GMC Acadia being involved in a long-term narcotics investigation. The RCPD also provided the license plate information of the GMC Acadia to SIB. Officer Adam Ward, a patrol officer for the Wichita Police Department Special Investigations Bureau Community Response Team ("SIB CRT"), learned that a residence within the 2500 block of S. Lulu in Wichita was possibly engaged in the sale of methamphetamine. Officer Ward was one of the SIB CRT patrol officers surveilling the 2500 block of S. Lulu on August 29, 2023.

At approximately 5:00 p.m., Officer Ward observed a gray GMC Acadia bearing the same license plate information that the RCPD provided arrive on the street and park. The driver of the GMC Acadia, who was later identified as Joseph Fabre, exited the vehicle and approached the front door of 2525 S. Lulu. Fabre knocked on the door and did not receive an answer. He then made a phone call and returned to the GMC Acadia parked on the curb.

A red Dodge pickup arrived and parked in the driveway of 2525 S. Lulu at approximately 5:31 p.m. The red Dodge pickup was registered to Bryan Baird. A white female was driving the red Dodge pickup with a white male in the passenger seat. Both occupants of the red Dodge pickup exited and met Fabre in the front yard. All three individuals then carried groceries from the red Dodge pickup into the residence.

At approximately 6:00 p.m., Fabre left from the front door of the residence, immediately got into the GMC Acadia, and drove southbound on Lulu. Two officers conducted a traffic stop on Fabre in the area of I-135 and Kellogg. A police service dog conducted a sniff of the vehicle. The two officers searched the GMC Acadia and located two plastic baggies. One baggie contained approximately 281 grams of methamphetamine, and the other baggie contained approximately 58 grams of cocaine. The cocaine appeared as if it had been recently broken from a larger brick of the same substance.

While the traffic stop of Fabre was being conducted, Officer Ward continued to conduct surveillance of 2525 S. Lulu. At 6:14 p.m., Officer Ward observed a dark color Dodge pickup arrive and park along the curb in front of 2525 S. Lulu. A heavy-set male, who was later identified as Eddie Fry from tracing the dark color Dodge pickup's registration information, exited the vehicle and approached the front door of the residence. Fry knocked on the front door and was let

inside the residence. At 6:31 p.m., Fry exited out of the front door of the residence, got into the dark colored Dodge pickup, and drove away heading south on Lulu.

Officer Ward conducted a records search of Fry. That search revealed that Fry had multiple felony level narcotics convictions in the State of Kansas. He was convicted in 2010 for possession of opiates, in 2015 for distribution of heroin or meth, in March 2016 for distribution of heroin or meth, and in April 2016 for possession of opiates, opium, narc drugs, or designated stimulant.

Additionally, Officer Ward conducted a local records check of 2525 S. Lulu. That check revealed that Baird was the last listed occupant of the residence. Baird also maintained an active water account at the residence and was listed as the property owner. Then, Officer Ward conducted a records search of Baird. That search revealed that Baird had multiple felony level narcotics convictions in the State of Kansas. He was convicted in 1991 for distribution/manufacture/sale/possession of depressants/stimulants/hallucinogens/steroids and two counts of manufacture/possession/distribution of opiates/opium/narcotics; in 2011 for two counts of possession of depressants/stimulants/hallucinogenic substances; in March 2015 for driving under the influence and distribution/possession with intent to distribute a controlled substance; and in September 2015 for possession of drug paraphernalia with intent to manufacture/grow.

On August 31, 2023, Officer Ward filed an affidavit and application for a search warrant. The application sought permission to search the 2525 S. Lulu residence and to seize (1) "[u]nknown quantity of methamphetamine in all forms;" (2) "[u]nknown quantity of cocaine in all forms;" (3) "US Currency, including debit cards, savings cards, and other cards capable of holding currency;" (4) "[p]ackaging material, scales, paraphernalia, containers, surveillance equipment and cellular phones used in association with the sale of meth, and/or cocaine;" (5) "[i]ndicia of

occupancy, residency, rental, and/or ownership of the premises described herein, including, but not limited to, utility and telephone bills, cellular phones, canceled envelopes, rental, purchase or lease agreements, photographs and keys;" (6) "[d]igital photographs of the residence to be searched and items to be seized." Officer Ward included the events detailed above in his affidavit and application. He also opined, based on his training and experience, that his observation of Fabre and Fry arriving at 2525 S. Lulu and leaving shortly thereafter was consistent with "come and go" stops of illegal narcotic sales where people purchasing from the drug dealer stay anywhere from a few minutes to 15-20 minutes.

The search warrant was signed by a Sedgwick County District Judge on August 30, 2023, at 2:04 p.m. On September 6, 2023, officers executed the search warrant for the residence of 2525 S. Lulu. Officers found 8,552.73 grams of methamphetamine, $4,338 in U.S. currency, a currency counting machine, digital scales, a notebook that appeared to include logs of drug transactions, and drug residue with burned aluminum foil that indicated drug use.

On October 29, 2024, the Government filed a two count indictment charging Baird for possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841 (a)(1), and (b)(1)(C) and using or maintain drug premises in violation of 21 U.S.C. § 856(a)(1). On January 21, 2025, Baird filed a Motion to Suppress asking the Court to suppress all evidence seized from the search of 2525 S. Lulu. The Court held a hearing on March 18, 2025, and the matter is now before the Court.

## II.    Analysis

Baird challenges the search of his residence, and the seizure of evidence contained therein, asserting that the state court search warrant lacked probable cause. The *Warrant Clause* of the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by

Oath or affirmation."[1] A warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, thereby allowing the issuing magistrate to make an independent evaluation of the matter.[2] "When reviewing a determination of probable cause for a search warrant, the Court must consider the totality of the circumstances and determine whether the affidavit establishes a fair probability that contraband or evidence of a crime will be found in a particular place."[3] Generally, the defendant has the burden of proof when challenging a search or seizure that was pursuant to a warrant.[4]

A finding of probable cause is to be determined from the "totality of the circumstances."[5] "Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place."[6] "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."[7]

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."[8] A magistrate's decision to

---

[1] U.S. Const. amend. IV.

[2] *Franks v. Delaware*, 438 U.S. 154, 165 (1978).

[3] *United States v. Ellis*, 2012 WL 6115086, at *2 (D. Kan. Dec. 10, 2012) (citing *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009)).

[4] *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994).

[5] *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001).

[6] *Id*.

[7] *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

[8] *United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999) (citing *Gates*, 462 U.S. at 238).

issue a warrant is entitled to great deference.[9] The court asks "whether the facts presented in the affidavit would 'warrant a man of reasonable caution' to believe that evidence of a crime will be found at the place to be searched."[10] The Court's duty is to ensure that the issuing judge had a "substantial basis" for concluding that the affidavit in support of the search warrant established probable cause.[11]

Baird asserts the affidavit lacked probable cause for two reasons. First, the affidavit failed to present any current information linking Baird to drug activity. Second, the affidavit failed to present any current information linking the address of 2525 S. Lulu to drug activity.

After examining the warrant affidavit, the Court concludes that the information contained within the affidavit supports the probability that evidence of a crime would be found at 2525 S. Lulu. Officer Ward's affidavit provides a detailed account of the investigation completed at the time of the search warrant request, and thus, establishes probable cause.[12]

The affidavit set forth the following facts to establish the probable cause necessary for the search of 2525 S. Lulu: (1) a tip was received from the RCPD about a long term narcotics investigation involving a GMC Acadia with an identified license plate number; (2) Officer Ward learned the 2500 block of S.Lulu was possibly engaged in the sale of methamphetamine; (3) a GMC Acadia bearing the identified license plate number was observed parking at 2525 S. Lulu

---

[9] *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).

[10] *Nolan*, 199 F.3d at 1183 (citing *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

[11] *Id*. (citing *Gates*, 462 U.S. at 236).

[12] It is not necessary that the affidavit "contain personal knowledge of illegal activity at the residence." *United States v. $149,442.43*, 965 F.2d 868, 874 (10th Cir. 1992). *See also United States v. Deppish*, 994 F. Supp. 2d 1211, 1218 (D. Kan. 2014) (noting that "[t]he affidavit need not aver that criminal activity actually occurred in" the location to be searched as long as " 'a person of reasonable caution' would 'believe that the articles sought would be found' " in the place to be searched).

with the driver identified as Fabre; (4) a red Dodge pickup registered to Baird parked in the driveway of 2525 S. Lulu with a white female driving and a white male sitting in the passenger seat; (5) Fabre, the white male, and the white female entered the residence at 2525 S. Lulu with groceries; (6) Fabre left the residence after being inside for approximately 30 minutes; (7) following Fabre's departure from the residence, a traffic stop was conducted of the GMC Acadia and baggies of methamphetamine and cocaine were found; (8) the cocaine found in the GMC Acadia appeared as if it had been recently broken from a larger brick of the same substance; (9) Fry, an individual with multiple felony-level narcotic convictions, was observed shortly thereafter entering the 2525 S. Lulu residence and leaving after approximately 17 minutes; and (10) Baird, an individual with multiple felony level narcotics convictions, was the property owner of 2525 S. Lulu. Additionally, Officer Ward's affidavit stated that based on his training and experience, his observation of Fabre and Fry arriving at 2525 S. Lulu and leaving shortly thereafter was consistent with "come and go" stops of illegal narcotic sales. A person of reasonable caution considering the facts identified in the affidavit would accept that there was a fair probability that evidence of the crimes alleged would be found at 2525 S. Lulu.

Baird argues that a person of reasonable caution could not find probable cause. Specifically, Baird argues that his criminal history and Fry's criminal history carry little to no weight in the analysis of whether the search warrant was supported by probable cause because their most recent convictions were from seven and eight years ago. The Court is unpersuaded by this argument. It is true that prior criminal history is insufficient by itself to support "a finding of

reasonable suspicion, much less probable cause."[13] "However, criminal history, combined with other factors, can support a finding of reasonable suspicion or probable cause."[14]

In this case, officers narrowed their focus on 2525 S. Lulu after observing the GMC Acadia parking outside the residence. After Fabre, the driver of the GMC Acadia, entered the residence and left after about 30 minutes, officers conducted a traffic stop where baggies of cocaine and methamphetamine were found. Officer Ward additionally reported in the search warrant affidavit that two individuals who either owned the property or visited 2525 S. Lulu had prior convictions for narcotics-related offenses. This corroborated RCPD's tip that a specific GMC Acadia was involved in a long-term narcotics investigation, and the information Officer Ward received about a residence in the 2500 block of S. Lulu that was possibly engaged in the sale of methamphetamine. Baird and Fry's criminal histories were not the sole factual basis relied upon in the search warrant affidavit. As such, there was sufficient other information in the search warrant affidavit for a person of reasonable caution to consider the prior criminal history of Baird and Fry within the totality of the circumstances.

Additionally, Baird argues that a person of reasonable caution could not find probable cause because mere propinquity to Fabre and Fry does not create probable cause. Essentially Baird argues that Fabre and Fry's visits to 2525 S. Lulu do not establish probable cause. "A person's mere propinquity to others independently suspected of criminal activity, creates neither probable

---

[13] *United States v. Artez*, 389 F.3d 1106, 1114 (10th Cir. 2004) (citing *United States v. Sandoval*, 29 F.3d 537, 542 (10th Cir. 1994).

[14] *Id*. at 1114 (further citations omitted).

cause nor reasonable suspicion."[15] However, propinquity to others independently suspected of criminal activity can be considered in conjunction with other facts and circumstances.[16]

As noted above, other facts and circumstances exist within the search warrant affidavit for the issuing judge to have considered alongside Fabre and Fry's propinquity. Fabre's possession of cocaine and methamphetamine and Fry's prior convictions for narcotics related offenses corroborated the tip that SIB received from RCPD. Additionally, Officer Ward's search warrant affidavit stated that based on his training and experience, his observation of Fabre and Fry arriving at 2525 S. Lulu and leaving shortly thereafter was consistent with "come and go" stops of illegal narcotic sales. Moreover, the cocaine that Fabre possessed shortly after leaving 2525 S. Lulu appeared to have recently been broken from a larger block of the same substance. As can be seen, Baird's propinquity to Fabre and Fry is not the sole factual basis of the search warrant affidavit. Rather, there were numerous facts within the search warrant affidavit for a person of reasonable caution to consider alongside the propinquity of Fabre and Fry.

While some of the factual circumstances within the search warrant affidavit would not individually be sufficient to support a finding of probable cause, under the totality of the circumstances, there was a substantial basis supporting the issuing judge's decision that probable cause existed to authorize a warrant to search 2525 S. Lulu. Accordingly, the Court finds that the search warrant makes an adequate showing of probable cause.

Further, even if the search warrant lacked probable cause, the Court upholds the officers' search of 2525 S. Lulu based on the good faith exception of *United States v. Leon*.[17] The good

---

[15] *Poolaw v. Marcantel*, 565 F.3d 721, 737 (10th Cir. 2009) (quotations and alterations omitted).

[16] *See id.*

[17] 468 U.S. 897 (1984).

faith doctrine provides that "when police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause."[18] This doctrine protects "the exclusionary rule's purpose of deterring improper police action, rather than punishing errors made by magistrates."[19] Because "officers are generally not required to second-guess the magistrate's decision in granting a warrant, . . . evidence obtained pursuant to a warrant that is later found to be defective is not properly excluded when the warrant is relied on by the officers in objective good faith."[20]

"In answering this question, the court should consider all of the circumstances and assume that the executing officers have a 'reasonable knowledge of what the law prohibits.' "[21] There are four exceptions to reliance on the good faith doctrine: (1) where the judge issued the warrant on a deliberately or recklessly false affidavit; (2) where the judge abandoned his neutral and detached judicial role; (3) where the affidavit is so lacking in indicia of probable cause that it would be unreasonable for the officer to rely on it; and (4) where the warrant is so facially deficient and fails to particularize that an officer cannot reasonably believe it to be valid.[22]

Baird argues that the good faith exception is not applicable in this case because the affidavit was so lacking in indicia of probable cause that it would be unreasonable for an officer to rely on it. However, the affidavit listed the address of the place to be searched, described the residence with particularity, and included facts explaining how the address was linked to suspected drug

---

[18] *United States v. Lora-Solano*, 330 F.3d 1288, 1294–95 (10th Cir. 2003) (citing *Leon*, 468 U.S. at 913).

[19] *Gonzales*, 399 F.3d at 1229 (citing *Leon*, 468 U.S. at 916).

[20] *Id*. at 1228–29.

[21] *United States v. Riccardi*, 405 F.3d 852, 863 (10th Cir. 2005) (quoting *Leon*, 468 U.S. at 919 n.20).

[22] *Leon*, 468 U.S. at 923.

activity. Consequently, the affidavit underlying the search warrant was not devoid of factual support linking 2525 S. Lulu to drug activity. As such, there is no information indicating the lack of good faith. Accordingly, the Court denies Defendant's Motion to Suppress.

**IT IS THEREFORE ORDERED** that Defendant Bryan Lewis Baird's Motion to Suppress (Doc. 20) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 2nd day of April, 2025.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE